**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **PATRICIA ROMAINE, as Mother, Next** | ) | |
| **Friend, and Special Administrator of** | ) | |
| **BENJAMIN ROMAINE, deceased,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 05 C 2643** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **CITY OF CHICAGO, CHICAGO POLICE** | ) | |
| **OFFICERS RICK CABALLERO, Star** | ) | |
| **11141, and THOMAS DAVEY, Star 3361,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**MEMORANDUM OPINION AND ORDER**</u>

Plaintiff Patricia Romaine ("Romaine" or "Plaintiff") brought a complaint alleging various federal and state law claims against Defendants City of Chicago ("the City") and its officers Rick Caballero and Thomas Davey (collectively "Defendants"), for the death of her son at Defendant officers' hands. Presently before this Court are Plaintiff's Petition for Sanctions, Fees & Costs (Doc. No. 132), which seeks recovery related to the City's violation of this Court's preservation order (Doc. No. 9), and Magistrate Judge Cole's Report and Recommendation on this issue (Doc. No. 90). For the reasons stated below, Plaintiff's motion is GRANTED in part and DENIED in part, and the Report and Recommendation is ADOPTED in its entirety.

1.      **FACTS**

The relevant facts were previously described by Magistrate Judge Cole in his Report and Recommendation of December 28, 2006 (Doc. No. 90) ("Report and Recommendation"). There

is therefore little reason to repeat those events in detail, and a summary will suffice for present purposes.

The automobile Plaintiff's son was driving when he was killed was arguably a key piece of evidence, in that it might have allowed Plaintiff to analyze bullet trajectory inside the vehicle driven by decedent at his death.[1]  Realizing this, Plaintiff moved for and was granted a preservation order to ensure that the vehicle would be available for discovery and trial purposes. The City of Chicago, through a sequence of administrative errors, failed to implement this Court's order and the vehicle was destroyed.  In response, Plaintiff filed a "MOTION for rule to show cause why City of Chicago should not be held in contempt," and Magistrate Judge Cole accepted briefs on this issue.  The Report and Recommendation that resulted found that "the City should be held in civil contempt and required to pay the costs plaintiff has incurred in bringing this motion, and any other costs that she can document that resulted from the destruction of the car," but that because prejudice suffered by Plaintiff as a result of the vehicle's destruction could not be assessed at that time, any additional question of sanctions should be deferred.  *See* Report and Recommendation at 15-17.  The case has since been settled without trial, and Plaintiff now moves for the imposition of monetary sanctions against the City, as well as recovery of the fees and costs addressed by the magistrate judge.

---

[1]As summarized by the magistrate judge, Plaintiff "submits that the inspection was critical to key questions, including the angle of the killing shot, whether Mr. Romaine was in fact fleeing rather than attacking, whether the bullet penetrated the driver's seat, and whether Mr. Romaine could have been pointing a gun through a partially open window at the [sic] one of the police officers, as one defendant officer has claimed."  Report and Recommendation at 3.

## 2.	ANALYSIS

Plaintiff requests that she be repaid the following sums: attorney fees of $18,135.00, for 40.3 hours of work at $450 per hour; court reporter costs of $698.22; and expert fees of $700.00. Plaintiff also requests that a replacement vehicle purchased by the City – intended to stand-in for the lost auto and mitigate the City's error – should be transferred to the owner of the destroyed automobile.  In addition, Plaintiff maintains that Defendant should be forced to pay additional funds as monetary sanctions for being found it contempt of this Court's preservation order.

### a.	Adoption of Report and Recommendation

As discussed above, the Report and Recommendation generally recommended that the City be found in civil contempt, that it be held liable for costs and fees related to Plaintiff's motion for rule to show cause, and that this Court reserve judgment on whether or not sanctions should be levied against the City.  The parties do not object to any of these findings, but continue to dispute the nature and amount of the fees and costs to be repaid to Plaintiff, and also argue over the only unresolved issue remaining from the magistrate judge's findings, *i.e.*, whether or not Defendant's contempt caused any prejudice to Plaintiff's case.  These arguments do not challenge the Report and Recommendation itself but rather seek clarification of its terms and impact.  This Court sees no reason to doubt the magistrate judge's opinion as it is amply supported by the record and unchallenged by the parties.  Therefore, the Report and Recommendation is hereby ADOPTED in its entirety, with the understanding that it left open the question of whether further sanctions should be imposed (beyond the cost of presenting the motion before Magistrate Judge Cole).

b.    <u>Sanctions</u>

Though the City is to be held in contempt, Plaintiff has failed to show that the contemptuous destruction prejudiced her case so as to warrant sanctions beyond the recovery of fees and costs.  *See generally* Report and Recommendation at 10 *et seq*.  The magistrate judge framed the issue of sanctions in this case in the following manner:

> If the plaintiff proves no more than it has proven thus far, no sanctions should be imposed beyond whatever costs the plaintiff can proveup, including the costs of bringing the motion.  If, at the end of all the discovery, the plaintiff, through competent evidence, can prove that its case has indeed been compromised as a consequence of the car's destruction, rather than its failure to comply with discovery deadlines, the matter can be revisited and the question of sanctions reassessed.

*Id.* at 16-17.

The reasons for finding a lack of prejudice were discussed by the magistrate judge, but some are worth reiterating here.  First, any analysis on the car itself would have been excluded from discovery anyway for the simple reason that Plaintiff's expert did not request to see the vehicle until after discovery had closed.  *See* Fed. R. Civ. P. 37(c)(1).  This notable delay also puts the lie to Plaintiff's claim that the car was essential to her case.  Second, alternatives to production of the vehicle were not pursued, such as requests for higher resolution photos of the car, or increased zoom on photos then in possession, to see if it could be determined whether or not there was a bullet hole in the back of the driver's seat.  *See generally* Nixon Dep. 37-50.  Similarly, Plaintiff chose not to use the replacement vehicle provided by the City to develop arguments based on possible bullet trajectories.  Whatever Plaintiff's reason for not pursuing alternatives that might have obviated the need for the car itself, the consequences of failing to pursue them should not be placed at the feet of the City.  Third, even if the car had been

available and discovery were expanded, there is still no clear indication of how much it would have assisted Plaintiff's calculation of trajectories; for example, the position of vehicle windows was unlikely to have been preserved between the night of the killing and discovery, *see* Report and Recommendation at 13, and Plaintiff's expert himself admits that the trajectory of the bullet would have been unpredictably altered as it broke through the vehicle's window, Resp. to Petition at 5. Finally, even if Plaintiff's ballistics expert John R. Nixon ("Nixon") had accessed the vehicle, there is still no reason to believe that his testimony would have been admitted at trial. On January 12, 2007, this Court struck Nixon's testimony for a variety of reasons apart from the presence or absence of the vehicle; Plaintiff has not shown that this Court would have ruled differently had the City produced the vehicle.

Though he didn't ultimately decide the matter, the magistrate judge was correct in finding that Plaintiff had proven no prejudice. As the Report and Recommendation stated: "In the end, there has been a negligent violation of a court order and unintentional destruction of potential evidence by the City. But that destruction has not caused any harm to the plaintiff – at least none that is presently perceptible." Since that report, Plaintiff has not offered any evidence or persuasive argument that undermines the magistrate judge's finding that any prejudice was caused by her own failure to develop the facts despite the City's error.[2] Therefore, though the City is to be sanctioned for failing to act with the proper care in executing a clear and direct

---

[2]The only new evidence arguably showing prejudice is the assertion by Plaintiff's counsel that the parties' settlement figure was lower than it should have been. *See* Pet. ¶ 3. However, this argument in no way addresses the magistrate judge's primary finding that any harm to Plaintiff's case cannot be causally connected to the destruction of the vehicle. *See generally* Report and Recommendation at 10-17. There is *no* basis for concluding that the settlement offer would have been higher but for the destruction.

order of this Court, it will be required to reimburse Plaintiff only for costs and fees arising from related filings.

      c.    <u>Attorneys' Fees</u>

The Court must determine the proper amount of reasonable attorney's fees. In determining reasonable attorney's fees, "[t]he most useful starting point ... is the number of hours reasonably expended on the litigation multiplied by a reasonable hourly rate." *Gisbrecht v. Barnhart*, 535 U.S. 789, 802, 122 S.Ct. 1817, 152 L.Ed.2d 996 (2002) (citing *Hensley v. Eckerhart*, 461 U.S. 424, 433, 103 S.Ct. 1933, 76 L.Ed.2d 40 (1983)). This lodestar calculation offers a basis for an initial estimate of reasonable fees. *Hensley*, 461 U.S. at 433. The court, however, has the discretion to depart from this calculation if any billed hours appear excessive, unnecessary, or redundant. *Id.* at 434. Further, on a fee application, the claimant has the initial burden of documenting and proving its claims. *Id.* at 437.

      i.    *Hourly Rate*

The party requesting attorney's fees bears the burden of substantiating the reasonableness of the hourly rates sought. *See Estate of Borst v. O'Brien*, 979 F.2d 511, 515 (7th Cir. 1992). "If the court is unable to determine the attorney's true billing rate (because he maintains a contingent fee practice or public interest practice, for example), then the court should look to the next best evidence-the rate charged by lawyers in the community of reasonably comparable skill, experience, and reputation.' " *People Who Care v. Rockford Bd. of Educ., School Dist. No. 205*, 90 F.3d 1307 (7th Cir. 1996) (citing *Blum v. Stenson*, 465 U.S. 886, 895 n. 11, 104 S.Ct. 1541, 1547 n. 11, 79 L.Ed.2d 891 (1984)). This method is intended to reach the lawyer's opportunity

costs, or the rate he or she could have received from a client charged by the hour for the same type of work. *See, e.g., Cooper v. Casey*, 97 F.3d 914, 920 (7th Cir. 1996).

Here, Plaintiff's counsel has provided no evidence of what a similarly-qualified lawyer would have received for similar work. Counsel for Plaintiff alleges that he takes cases on a contingent fee basis and has no regular hourly rate history. He does not explain why he could not calculate an "average" hourly rate by dividing his fees obtained over a relevant period of time by the number of hours expended in those cases. Instead, he cites a single article referencing an area firm billing out partners at $800 per hour, but the article dates from three years ago and provides no information about what sort of legal work would form the basis for such a rate. What remains is counsel's assertion that the rate of $450.00 is reasonable "based on normal billing rates for law firms in this area, and my education and experience." Alexander Aff. ¶ 4. This experience, we are told, amounts to just under 18 years of practice, study at University of Chicago Law School, and over fifteen instances of first-chair experience at jury trials. However, this unsupported assertion simply does not meet Plaintiff's burden to provide a basis for the attorney fees Plaintiff is claiming. While the University of Chicago Law School is a fine institution, the fact of his graduation without data as to what other graduates of his vintage receive is not helpful.

Defendant references a cap of $350 for a class of civil rights litigators referenced in another case. *See* Resp. to Pet. at 6-7 (citing *Newsome v. McCabe*, 2002 WL 1008472 at *7 (N.D. Ill. May 17, 2002)). Because Defendant does not elaborate any further on what an appropriate rate might be, this Court will assume that the City does not object to applying that rate. Therefore, Plaintiff's attorney fees will be calculated according to an hourly rate of $350.

ii.       *Number of Hours*

It is generally recognized that attorneys are under an obligation to keep contemporaneous time records to support a petition for fees.  *See Vocca v. Playboy Hotel of Chicago, Inc.*, 686 F.2d 605, 608 (7th Cir. 1982).  However, substantially reconstructed billing records may satisfy that obligation.  *Rybicki v. State Bd. of Elections*, 584 F.Supp. 849, 861 (N.D. Ill.1984).  What is important is that the records be adequate and detailed.  Therefore, although casual after-the-fact estimates of time are clearly insufficient, *Nat'l Ass'n of Concerned Veterans v. Sec'y of Defense*, 675 F.2d 1319, 1327 (D.C. Cir. 1982), the failure to keep contemporary records is not a *per se* reason to deny a fee award; outright denial despite evidence of much work would be punitive not only to Plaintiff's counsel but to Plaintiff.

Plaintiff's counsel offers only an *ex post facto* estimate of the time he spent on problems related to the lost vehicle, claiming that "by reviewing the filings, depositions, correspondence, etc., related to the contempt motion, I am able to estimate the time spent with a high degree of accuracy."  Alexander Aff. ¶ 5.  Such estimates of time do not necessarily fail to prove the amount of time spent by counsel on this issue, but Defendant has nonetheless objected to the following estimates made by Plaintiff's counsel: 4.3 hours spent drafting a "Motion for Rule to Show Cause"; 2.1 hours for the filing and appearance related to a "Motion for Extension to File Petition for Sanctions"; 6.2 hours drafting the "Petition for Sanctions, Fees, and Costs" now before this Court; and approximately 4 hours preparing for the depositions of Sgt. Matthew Brady and Detective March, each of which lasted approximately thirty minutes.  *See* Resp. to Pet. at 7.

The majority of Defendant's objections amount to claims that Plaintiff's counsel simply took too long completing the named tasks in light of their size and complexity. For the most part these arguments are unavailing: it is not alarming that a competent attorney spends significantly more time preparing for a deposition than the time required for the actual deposition, as the depositions' half-hour length does not necessarily reflect their complexity; and Defendant asks this Court to second-guess Plaintiff's estimate of time spent on two other motions without providing any evidence or affidavits that might contradict that estimate. Therefore, all of these hours of work will be credited to the Plaintiff. However, it appears that Plaintiff's motion for extension of time was filed solely for counsel's convenience rather than as a matter of necessity, therefore Plaintiff should not recover for the 2.1 hours spent on this endeavor. Plaintiff will recover fees for the remaining 38.2 hours of counsel's work.

### iii.    Adjustments

Neither party has asked this Court to adjust the lodestar estimate of attorney's fees, and this Court sees no reason to do so. Therefore, the total amount of damages shall be entered without any adjustment for additional considerations. For the reasons stated above, Plaintiff is to be awarded $13,370.00 in attorneys' fees (38.2 hours at $350 per hour).

### d.    Additional Costs and Remedies

Plaintiff has requested that the City be ordered to turn over the replacement automobile that it purchased to mitigate its preservation order error. At the time of decedent's death he was in possession of a vehicle of an identical make, model, and color as that which is now in the City's possession. Through Defendant's error, that vehicle was destroyed. Therefore, this Court finds that a proper make-whole remedy requires that this vehicle – or the cash value thereof – be

transferred back to the decedent's estate, as represented by Plaintiff Romaine.  If the City elects

to pay the cash value, that figure should correspond to the "Blue Book" value on the date the

vehicle was destroyed.

Plaintiff also seeks recovery of the funds spent on court reporting during the destroyed

vehicle dispute.  Defendant does not object to this request, other than to say that it would prefer

making this payment directly to the reporting body.  Plaintiff seems to suggest that this amount

should be included with the total damages.  This Court sees no compelling reason to deviate

from Plaintiff's requested approach, and therefore includes the sum of $698.22 in the total

damages award.

Plaintiff also maintains that she should be compensated for time her ballistics expert

Nixon spent considering issues related to the lost vehicle.  The exhibit with which she supports

this request is a letter from Nixon stating that "[t]he lack of a vehicle hindered my investigation,

and I would estimate that I spent approximately 2.5 hours considering options, deliberating the

facts, and writing to you on the issue."  Pl.'s Ex. A.  Defendant maintains that this explanation is

made in a "summary fashion" that "does not itemize any work done or otherwise explain how

Mr. Nixon arrived at this estimate," leaving it "unclear why those fees are attributable to the

Motion for Rule to Show Cause."  Resp. to Pet. at 8.  However, it is certainly reasonable to

assume that once the vehicle's destruction was apparent, the expert who requested that it be

examined would be consulted to see what steps should be taken.  As that is the case, 2.5 hours

does not seem to be an unreasonable or exaggerated amount of time that such consultation might

require.  Therefore, $700 (2.5 hours at a rate of $280 per hour) for Nixon's work regarding the

destroyed vehicle will be included in the total damages to be repaid to Plaintiff.

3.    **CONCLUSION**

For the foregoing reasons, the magistrate judge's Report and Recommendation dated December 28, 2006 (Doc. No. 90) is ADOPTED in its entirety.  Defendant's petition for sanctions, fees and costs (Doc. No. 132) is GRANTED in part and DENIED in part.  Defendant City of Chicago is ordered to transfer the replacement automobile to Plaintiff.  If the City so chooses, it may compensate Plaintiff with the vehicle's equivalent cash value calculated according to the above terms.  If monetary compensation is chosen, the parties are ordered to meet and confer to determine the amount of that compensation.  At present, judgment in favor of Plaintiff Romaine will be in the amount of $13,370 in attorney's fees and $1,398.22 in costs, for a total judgment of $14,768.22.  However, determination of the judgment's total value will be withheld pending resolution of the vehicle transfer issue.


Enter:
/s/ David H. Coar

_____
David H. Coar
United States District Judge


Dated: **August 30, 2007**